UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

\* \* \*

BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,

    Plaintiff,

    v.

PEBBLE CREEK PLAZA, LLC, a Nevada limited liability company; YOEL INY, individually and as Trustee of the Y&T INY FAMILY TRUST dated June 8, 1994; NOAM SCHWARTZ, individually and as Trustee of the NOAM SCHWARTZ TRUST dated August 19, 1999; D.M.S.I., LLC, a Nevada limited liability company; and DOES 1 through 10, inclusive,

    Defendants.

2:12-CV-01737-LRH-NJK

ORDER

This is a final deficiency judgment entered in favor of plaintiff Branch Banking and Trust Company ("Branch Banking") and against defendants in the amount of one million eight hundred and two thousand five hundred twenty-five dollars and one cent ($1,802,525.01) plus interest at the Note rate of 2.49% per annum.

**I. Facts and Procedural History**

On September 12, 2006, Borrower Pebble Creek Plaza, LLC ("Borrower") executed and delivered a Promissory Note Secured by Deed of Trust to Colonial Bank, N.A. ("Colonial

1

Bank"), in the original amount of $3,526,000.00 (the "Note").  ECF No. 67, Ex. 1A; ECF No. 87, Ex. 1.[1]  The Note was secured by a Deed of Trust and Security Agreement and Fixture Filing with Assignment of Rents ("Deed of Trust"), dated September 12, 2006, encumbering certain real property in Maricopa County, Arizona (the "Property").  ECF No. 67, Ex. 1B; ECF No. 87, Ex. 2.  Also on September 12, 2006, Defendants Yoel Iny, individually and as Trustee of the Y&T Iny Family Trust; Noam Schwartz, individually and as Trustee of the Noam Schwartz Trust; and D.M.S.I., LLC (collectively "Guarantors") executed and delivered to Colonial Bank a Guarantee (the "Guarantee").  ECF No. 67, Ex. 1C; Doc. #87, Ex. 3.  Pursuant to the Guarantee, the Guarantors guaranteed the payment of all indebtedness of the Borrower under the loan evidenced by the Note (the "Loan").  *Id*.

On May 26, 2009, the Note was amended by an Amendment to Promissory Note Secured by Deed of Trust such that the Maturity Date on the Note was extended to June 29, 2009 (the "Amendment").  ECF No. 67, Ex. 1D; ECF No. 87, Ex. 4.  Also on May 26, 2009, a Modification to the Deed of Trust was executed and recorded in Maricopa County, Arizona.  ECF No. 87, Ex. 6.  On August 14, 2009, Colonial Bank was closed by the State Banking Department of the State of Alabama and the Federal Deposit Insurance Corporation ("FDIC") was named receiver in order to liquidate and distribute the assets of Colonial Bank.  ECF No. 67, Ex. 1E; ECF No. 87, Ex. 6.  On September 28, 2011, the FDIC executed an Assignment of Security Instruments, Notes and Other Loan Documents (the "Assignment"), to be deemed effective as of August 14, 2009.  *Id*.  Pursuant to the terms of the Assignment, the FDIC assigned all rights, title, and interest in the Note, the Deed of Trust, and the Guarantee to Branch Banking.  *Id*.  The Assignment was recorded in Maricopa County, Arizona, on November 4, 2011.  *Id*.

The Borrower failed to pay the outstanding principal balance of the loan due under the Note on June 29, 2009.  ECF No. 84-3, Ex. 2 (Schwartz Depo.), 12:25-13:4.  By demand letter dated August 3, 2011 (the "Demand Letter"), Branch Banking indicated its intent to take steps to

---

[1] Refers to the court's docket number.

2

exercise its rights and remedies under the Loan on or after August 31, 2011.  ECF No. 67, Ex. 1F.  On December 16, 2011, Branch Banking commenced a judicial foreclosure action under the Deed of Trust by filing a Verified Complaint in the Superior Court of the County of Maricopa, Arizona.  ECF No. 87, Ex. 7.  A Default Judgment ordering the judicial foreclosure of the Property in full or partial satisfaction of the outstanding balance due under the Loan via Sheriff's sale was entered by the Superior Court of the County of Maricopa, Arizona, on July 19, 2012.  ECF No. 67, Ex. 1G; ECF No. 87. 50, Ex. 11.  The Sheriff of the County of Maricopa, Arizona, sold the Property on July 19, 2012, at public auction for a cash bid of $1,520,000.00 in partial satisfaction of the Loan.  ECF No. 67, Ex. 1H; ECF No. 87, Ex. 12.

On October 3, 2012, Branch Banking filed a Complaint before this Court, alleging claims for deficiency, breach of guarantee, and breach of the covenant of good faith and fair dealing. ECF No. 1.  September 15, 2014, the Court granted Branch Banking's Motion for Summary Judgment, and denied Defendants' Motion for Summary Judgment.  ECF No. 116.  The Court also directed the parties to file briefs for a deficiency hearing pursuant to NRS § 40.457(1).

On November 25, 2014, Defendants and Branch Banking filed their opening briefs.  ECF No. 129 and 130.  On January 20, 2015, Defendants and Branch Banking filed their respective responses.  ECF No. 141 and 142.  On June 27, 2016, the parties stipulated that the fair market value of the property on July 19, 2012 was $1,700,000.00.  ECF No. 149.

**II. Legal Standard**

Pursuant to NRS 40.455, a court shall award a deficiency judgment to a judgment creditor upon a finding that there is a deficiency between the proceeds of a trustee's sale and the balance owed to the judgment creditor.  NRS 40.455(1).  However, before a court issues a deficiency judgment, the court must take evidence "concerning the fair market value of the property sold as of the date of foreclosure sale or trustee's sale."  NRS 40.457(1).  After determining the fair market value of the property, "the court shall award a judgment against the… guarantor... who is personally liable for the debt."  NRS 40.459(1).  The amount of the

deficiency judgment shall not be more than "[t]he amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale." NRS 40.459(1)(a).

**III. Discussion**

This is a fair market valuation determination pursuant to NRS 40.457. The issues before the court are (1) what was the fair market value of the underlying property at the date of the sale, and (2) what amount should be entered as a deficiency judgment, if any. The court shall address both issues below.

**A. Fair Market Valuation**

The parties have stipulated that the fair market value of the property on July 19, 2012, was $1,700,000. ECF No. 149. As this is the only evidence of fair market value, the court shall accept this figure and values the underlying property at $1,700,000.

**B. Deficiency Judgment Amount**

Branch Banking contends that the amount of indebtedness on July 19, 2012, the date of the Sheriff's sale, was $3,502,525.01. In response, Defendants argue that Branch Banking cannot competently prove the amount of indebtedness and that Defendants are entitled to off-sets, which would result in a finding that there is no deficiency. Defendants also argue that because Branch Banking violated an order by the Court to produce evidence which is relevant to the determination of the amount of indebtedness, they should be sanctioned by precluding them from offering any evidence regarding the amount of indebtedness.

First, Defendants argue that Branch Banking cannot prove the amount of the principal balance of the loan because Branch Banking is relying on the declaration of Peter Nugent, a senior vice president at Branch Banking. Defendants argue that Mr. Nugent does not have personal knowledge and cannot lay a sufficient foundation for the books and records of Branch Banking in order to establish the facts of his declaration. This Court has already rejected such an argument. ECF No. 116. Further, as the court has already noted, Defendants have independently

authenticated the loan documents.  Ronnie Schwartz, Defendants' Person Most Knowledgeable, acknowledged and authenticated each of the loan documents at issue.  *See* ECF No. 84-3, Ex. 2 (Schwartz Depo.), 12:25-13:4.  Thus, the declaration and related loan documents establish an amount of indebtedness of $3,502,525.01.

Second, Defendants argue that Branch Banking has failed to prove that taxes paid, appraisals, environmental reviews, costs, late fees, and attorney's fees related to the foreclosure action should be included in the indebtedness.  However, Branch Banking is entitled to recover these amounts.  *See, e.g., Branch Banking & Trust Co. v. Jarrett,* No. 3:13-CV-00235-RCJ, 2014 WL 2573483, at *13 (D. Nev. June 9, 2014), appeal dismissed (Dec. 17, 2014); *Woori Am. Bank v. Sahara Westwood Hotel, LLC,* No. 2:10-CV-00358-KJD, 2011 WL 2295072, at *7 (D. Nev. June 8, 2011).

Third, Defendants argue that Branch Banking has not established the correct interest rate to be applied to the loan, which the loan stated would be a base rate plus a variable rate derived from the LIBOR rate.  ECF No. 1, Ex. 1.  Defendants argue that Branch Banking provides no evidence of what the LIBOR was at all relevant times of the subject loan.  However, the LIBOR rate is readily determinable information, and Branch Banking has provided the amount of accrued interest.

Fourth, Defendants argue that Branch Banking is not entitled to an award of attorney's fees and costs related to the foreclosure action because Branch Banking did not seek those fees in the Arizona judicial foreclosure action, Branch Banking violated the Work-Out Agreement, and Branch Banking has not established that the fees and costs are reasonable pursuant to Nevada law.  As to the first argument, this Court has already held that Branch Banking's failure to request or obtain a money judgment in the judicial foreclosure action in Arizona does not affect its right to pursue a deficiency in Nevada.  ECF No. 116.  As to the second argument, this Court has already rejected Defendants' position as to any alleged breach of an oral "Work-Out Agreement."  ECF No. 105.  Finally, as to the third argument, the Deed of Trust establishes

liability for "attorneys' fees incurred in any bankruptcy or judicial or nonjudicial foreclosure proceeding." ECF No. 1, Ex. 2. However, the Court finds that Branch Banking has not adequately complied with Local Rule 54-16 and denies the request without prejudice.

Finally, Defendants argue that they are entitled to off-sets due to Branch Banking's delay in foreclosing and in relation to the Work-Out Agreement. However, Branch Banking had no duty to immediately foreclose. *See, e.g., Fed. Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706 (Tex. 1990). Further, Defendants executed an acknowledgment letter acknowledging that any acceptance of payments by Branch Banking after Defendants' default did not prejudice Branch Banking with respect to any of its rights and remedies under the subject loan documents. ECF No. 91, Ex. 1. Next, to the extent Defendants request off-sets on the basis of Branch Banking's alleged breach of an oral "Work-Out Agreement" to forebear enforcing certain rights under the Loan documents, the Court has already rejected Defendants' position. ECF No. 105. Therefore, Defendants are not entitled to any off-sets.

Additionally, Defendants argue that because Branch Banking did not supplement their discovery responses as required by the Court's order (ECF No. 78 and 104), they are subject to the sanctions available in FRCP 37(b)(2)(A), which include issue establishment and evidence preclusion. If a party fails to comply with a discovery order, FRCP 37(b)(2)(A) allows the court to impose sanctions against the party. *Gomez v. Thrive Lifestyle Servs., LLC*, No. 3:12-CV-00766-ST, 2014 WL 4631201, at *3 (D. Or. Sept. 15, 2014). When considering whether to impose sanctions under FRCP 37(b)(2) (A), the district court must weigh five factors before doing so: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991) (citations and internal punctuation omitted); *see also Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 1993); *Tacori Enters. v. Beverlly Jewellery Co., Ltd.*, 253 F.R.D. 577, 584 (C.D. Cal. 2008). "[T]he key factors

are prejudice and the availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990); *see also Henry v. Gill Industries, Inc.*, 983 F.2d at 948.  The fact that Defendants have only brought this issue up now, at the end of litigation, months after Branch Banking filed a motion for summary judgment and Defendants themselves filed their own motion for summary judgment indicates that they were not prejudiced by any alleged failures to respond to discovery. Because Defendants cannot show that they have been prejudiced, sanctions are not appropriate.

Thus, the amount of indebtedness as of July 19, 2012 was $3,502,525.01.  Subtracting $1,700,000, the fair market value of the Property, which was higher than the actual sale price, Branch Banking is entitled to a deficiency judgment of $1,802,525.01 plus interest at the Note rate of 2.49% per annum.  Accordingly, the court shall enter a final deficiency judgment in this amount.

**IV. Conclusion**

IT IS THEREFORE ORDERED that the clerk of court shall enter a final deficiency judgment in favor of plaintiff Branch Banking, and against Defendants, in the amount of one million eight hundred and two thousand five hundred twenty-five dollars and one cent ($1,802,525.01) plus interest at the Note rate of 2.49% per annum.

IT IS FURTHER ORDERED that Branch Banking's request for attorneys' fees that were accrued in the Judicial Foreclosure Action is DENIED without prejudice.

IT IS SO ORDERED.

DATED this 11th day of July, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE